FIRST FINANCIAL FEDERAL SAV-
INGS & LOAN ASSOCIATION,
Plaintiff,

v.

E.F. HUTTON MORTGAGE CORPORA-
TION and Westcap Government Securi-
ties, Inc., E.F. Hutton & Company, Inc.,
Defendants.

No. 86–1104.

United States District Court,
W.D. Arkansas,
El Dorado Division.

Jan. 23, 1987.

Ian W. Vickery, Vickery & Jones, El
Dorado, Ark., for plaintiff.

Compton, Prewett, Thomas & Hickey by
Robert C. Compton, El Dorado, Ark., and
Cadwalader, Wickersham & Taft by How-
ard R. Hawkins, Jr., New York City, for
defendant E.F. Hutton Mortg. Corp. etc.

Wright, Lindsey and Jennings by Peter
G. Kumpe and Leon Holmes, Little Rock,
Ark., for defendant Westcap Government
Securities.

ORDER

OREN HARRIS, Senior District Judge.

Before the Court are Motions to Dismiss
filed on behalf of defendants, E.F. Hutton
Mortgage Corporation (Hutton), E.F. Hut-
ton & Company, Inc. (Hutton Inc.),[1] and
Westcap Securities, Inc. (Westcap)[2].
Plaintiff has filed a response in opposition
to the motions.

At the request of the parties a hearing
was held on the motions on October 30,
1986, in El Dorado, Arkansas. All parties
were present at the hearing with their
counsel. The parties submitted the issues
to be decided by the Court through oral
presentations and written briefs. The
Court being well and sufficiently advised of

---

1.  Plaintiff names E.F. Hutton & Company, Inc.,
as a defendant asserting that it is intertwined in
the management, operation, debts and assets of
E.F. Hutton Mortgage Corporation as to make
the two a single entity, therefore, rendering Hut-
ton & Company, Inc., liable for the actions of
Hutton Mortgage Corp.

2.  Plaintiff includes Westcap Government Securi-
ties, Inc., as a named defendant for its alleged
role as a broker and representative for Hutton
Mortgage Corp. in the sale of the loans.

the issues presented by the parties is now prepared to enter its decision.

This action was originally commenced on June 25, 1985, with the filing of plaintiff's complaint in the Circuit Court of Union County, State of Arkansas, Second Division. On August 25, 1985, upon petition of defendants, this action was removed to Federal District Court pursuant to 28 U.S.C. § 1332 based upon of diversity of citizenship of the parties. Plaintiff filed this action asserting a claim for fraudulent misrepresentation and recission and a claim for violation of the state securities law. Plaintiff seeks recission of the sale of mortgage loans and also punitive damages for alleged willful misrepresentations made by defendants in connection with the sale.

Plaintiff and defendant, Hutton, entered into a purchase agreement on May 24, 1985. In that agreement plaintiff contracted with Hutton to purchase a package of mortgage loans valued at approximately two million five hundred thousand dollars ($2,500,000.00). After further negotiations between the parties an agreement was reached that plaintiff would purchase the loans for two million two hundred thirty-two thousand five hundred sixty-five dollars ($2,232,565.00).

Plaintiff alleges that subsequent to the completion of the sale it was learned that some of the mortgage loans were unsatisfactory and seriously delinquent. Plaintiff asserts that it relied upon representations made by Hutton that (1) the loans were secured by first and second mortgages which did not total more than 70% of the property's appraised value (2) that the average life of the loans was 60 months or less and would yield 5% per annum until maturity, after servicing costs and (3) the loans were insured 100% by Rockwood Insurance Co.

After consumation of the sale, plaintiff contends, it made efforts to obtain documentation and information with regard to the loans from Hutton, Rockwood Insurance, and FAMCO. FAMCO, First American Mortgage Company, was the originator of the loans sold to Hutton. Hutton thereafter sold the loans to plaintiff while FAMCO remained the servicer of the loans as outlined in the Servicing Agreement (Def. Motion to Dismiss, Exh. C). It was apparently at this time that plaintiff learned that some of the mortgage loans were delinquent or otherwise unsatisfactory. Plaintiff alleges that attempts at inquiry of the defendants for more information as to the condition of the loans met with misrepresentations and concealment of facts.

Plaintiff also states that subsequent to the sale defendant Hutton generated and distributed to plaintiff its own records of delinquencies, pay histories, and other financial data concerning the mortgage loans purchased and that such information was not true and accurate as represented by Hutton. Furthermore, if the true and accurate condition of the loans had been provided to plaintiff it asserts that it would not have consumated the purchase of certain unsatisfactory mortgage loans. Plaintiff states that it has made demand of Hutton for the repurchase of these unsatisfactory loans and that such demand has been refused.

Defendants request in their motion to dismiss that the Court dismiss plaintiff's claims for fraud, misrepresentation and recission and also the claim for violation of Arkansas securities law pursuant to Rule 12(b)(6), Fed.Rules of Civ.Pro., for failure to state a claim upon which relief may be granted.

■ In regard to plaintiff's first claim the contention is that defendants have committed fraud in connection with the sale of the mortgage loans by misrepresenting and/or concealing facts relating to the condition of the loans. Plaintiff alleges that it did not have full knowledge of the condition of the loans due to alleged misrepresentation or omission of material facts by defendants and that if the true condition of certain loans had been made known to plaintiff it would not have consummated the purchase of such loans. Defendants counter in their motion to dismiss that plaintiff contracted away any reliance by it on any representations which may have

been made by defendants outside the contract concerning the loans. In support of their position defendants rely on several provisions of the purchase agreement. Specifically the contract states under the provision entitled "Origination" as follows:

> Purchaser understands that the mortgage loans have been purchased by Seller in the secondary market and that Seller is selling the mortgage loans "as is" and is making no representations and warranties with respect to the mortgage loans but will assign to Purchaser those representations and warranties which it has received from the Originator and all of its rights under the Servicing Agreement.

Compl., Exhibit A, p. 4.

The Purchase agreement also provided that plaintiff retained the right to review the records and files of the individual mortgage loans on its own.

> Purchaser retains the right to review all mortgage files and to make site inspections of the properties securing any mortgage loan and reject any mortgage loan that does not meet the terms and conditions of this Agreement and the Commitment ... In addition, Purchaser may visit the offices of Originator, servicer and Rockwood in order to satisfy itself as to the procedures used by those entitled.

Comp., Exhibit A, p. 3.

Defendants argue that plaintiff, by agreement to the language of the contract, has admitted that it (1) obtained access to all relevant information, (2) made its own independent determination, relying on its own experience as a sophisticated commercial institution, understanding the risks involved, and (3) purchased the loans "as is".

Defendants rely on the language of the provisions of the agreement previously cited as evidence that plaintiff has disclaimed or waived any reliance on any representations made by defendants. Defendants contend that as a matter of law under the contract that there was no duty of disclosure and in fact plaintiff acknowledged in the agreement that it had full access to all information available concerning the loans. Therefore, defendants assert, the plaintiff has failed to state a claim for relief under Count I of the complaint for fraud, misrepresentation or recission.

As to the governing law the purchase agreement states "[t]his agreement shall be governed by and construed in accordance with the laws of the State of New York" (Comp.Exh. A, p. 4). Under New York law in order to establish a case of misrepresentation the plaintiff must allege the following five elements.

(1) A false representation by the defendant,

(2) knowledge or belief on the part of the person making it that the representation is false; or that there is an insufficient basis for making the statement,

(3) intention to induce plaintiff to act or rely upon the statement,

(4) justifiable reliance by the plaintiff,

(5) damage to plaintiff.

*Pittsburgh Coke & Chemical Co. v. Bollo,* 421 F.Supp. 908, 924 (E.D.N.Y.1976), *aff'd,* 560 F.2d 1089 (2d Cir.1977).

Arkansas law is in accord on the elements of misrepresentation. *Union National Bank of Little Rock v. Farmers Bank,* 786 F.2d 881, 885 (8th Cir.1986).

Defendants contend that even if the alleged representations were made that in view of the contract language plaintiff has failed to allege justifiable reliance on any such representations. The issue which is thus raised is whether the "disclaimer" provisions of the purchase agreement negate any claim by plaintiff of misrepresentations or fraud on the part of defendants in connection with the sale of the mortgage loans.

Defendants contend that analyzed under the governing law of New York that plaintiff fails to state a claim for fraud, misrepresentation or recission. A leading New York case on this issue is *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y. S.2d 599, 157 N.E.2d 597 (1959).

In *Danann* the plaintiff alleged as its first cause of action that it had been in-

duced to enter a contract of sale of a lease of a building because of false representations made by defendants. Plaintiff sought damages for fraud which the Court of Appeals of New York denied and reinstated a lower court's dismissal of plaintiff's fraud claim. The contract contained a provision in which the purchaser/plaintiff acknowledged that no representations had been made by the seller as to the physical condition, rents, leases, expenses or operation of the premises. The contract also included an acknowledgement that the purchaser had inspected the premises and neither party was relying on any representation made by the other outside the contract. Based upon this provision the Court found there was no justifiable reliance by plaintiff on the alleged false representations made by the seller. Although the court accepted as true plaintiff's statements that misrepresentations were made by the seller the court found that based upon the above provision there was no justifiable reliance by plaintiff on any misrepresentations that may have been made and therefore the fraud claim was dismissed. The court held that plaintiff's claim of fraud was in direct contradiction to the provision of the contract.

Arkansas law on the principle of waiver is explained by the Arkansas Supreme Court in *Ray Dodge, Inc. v. Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972) in which the court stated:

> Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. It may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it.

*Ray Dodge, Inc.* at 1039, 479 S.W.2d 518.

Contrary to this principle plaintiff asserts that its entire allegation of fraud and misrepresentation is based on the fact that plaintiff did not have full knowledge of any of the material facts constituting the fraud. Plaintiff states that although it had the right and ability to inquire of defendants information concerning the condition of the mortgage loans that attempts to gain such information were met with misrepresentations or concealment of facts.

It is well established that the parties involved herein are both experienced, and knowledgeable in financial transactions. In this instance plaintiff and defendants were two business entities dealing at arms length. The subject matter of the transaction was within plaintiff's experience as a financial institution and knowledge of specific facts concerning the mortgage loans was available to plaintiff to determine their condition.

Plaintiff contends that attempts to get such information from the defendants resulted in misrepresentations and omissions. However, plaintiff also had the right and opportunity under the purchase agreement to review and inspect the individual mortgage loan files.

In considering the motion to dismiss the Court must accept plaintiff's allegations as true that certain misrepresentations were made by defendants concerning the loans. However, the provisions of the purchase agreement directly contradict plaintiff's allegations of fraudulent misrepresentations and omissions outside the agreement. As previously cited herein the agreement provides that neither party is relying on any representations made by the other party outside the contract itself. This provision of the agreement negates plaintiff's claim of justifiable reliance on any alleged misrepresentations by defendants. Justifiable reliance is an important element of fraud and the absence of proof of such reliance causes plaintiff's claim of fraud to fail.

■ Plaintiff's second claim concerns alleged violations of the antifraud provisions of the Arkansas securities laws by defendants. Plaintiff alleges that the loans which it purchased from defendants are "securities" as defined in the Arkansas Securities Act and therefore are subject to regulation under the Act. Plaintiff again asserts that certain representations made by defendants with regard to the loans purchased

were false, inaccurate, and misleading. Specific misrepresentations that plaintiff contends were made by defendants were (1) that none of the loans exceeded 70% of the appraised value of the property, (2) that FAMCO was a creditworthy and trustworthy servicing company and (3) that defendant Hutton had effectively assigned its insurance coverage rights with Rockwood Insurance to plaintiff. These representations are alleged to have been fraudulently made to induce plaintiff to purchase the mortgage loans and therefore constituted a violation of the Arkansas Securities Laws.

Defendants contend that the mortgage loans purchased by plaintiff are not securities as defined under the Arkansas Securities Act, Ark.Stat.Ann. §§ 67–1235 et seq. "Security" is defined under § 67–1247($l$) as follows:

> "Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; investment contract; variable annuity contract; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a "security" or any certificate of interest or participation in, temporary or interim certificate for, guarantee of, or warrant or right to subscribe to or purchase any of the foregoing * * *

The Arkansas definition of a security is essentially identical to the definition under federal securities laws and the criteria followed in making a determination whether an instrument is a security is also the same. *Union National Bank v. Farmers Bank, Hamburg*, 786 F.2d 881 (8th Cir. 1986); *Smith v. State*, 266 Ark. 861, 587 S.W.2d 50 (Ark.Ct.App.1979), cert. denied,

445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980).

The United States Supreme Court established a four part test for determining the existence of a security in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The Supreme Court defined a security as (1) an investment, (2) in a common venture, (3) with a reasonable expectation of profit, (4) to be derived from the entrepreneurial and managerial efforts of others. The test applied in Arkansas courts closely parallels the *Howey* test.[3] These same factors have been analyzed by the Eighth Circuit Court of Appeals in *Union National Bank of Little Rock v. Farmers Bank*, 786 F.2d 881 (8th Cir.1986), to determine whether a loan participation is a security under federal securities laws. Under both the *Howey* test for federal securities law and the *Smith* test for Arkansas securities law the Court found that Union National's loan participation was not a security under either state or federal securities law. Also in *Kansas State Bank v. Citizens Bank*, 737 F.2d 1490 (8th Cir. 1984) the court applied the *Howey* test in determining that Citizen Bank's loan participation interest was not a security. The rationale of the *Howey* test is to examine the "economic realities underlying a transaction and not on the name appended thereto." *United Housing Foundation v. Forman*, 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975).

According to the above caselaw the first two requirements of a security are that it be an investment, rather than an ordinary commercial transaction, and a common venture. After a careful review of the record of the case it is apparent that there is some factual dispute between the parties as to whether these requirements have been met. Plaintiff tries to distinguish this transaction from an ordinary loan. Plaintiff refers to it as an "investment contract"

---

**3.** In *Smith v. State*, 266 Ark. 861, 865, 587 S.W.2d 50 (Ark.Ct.App.1979), the court listed the following five common characteristics of all securities (1) investment of money or money's worth, (2) investment in a venture, (3) the expectation of some benefit to the investor as a result of the investment, (4) contribution towards the risk capital of the venture, and (5) the absence of direct control over investment or policy decisions concerning the venture.

asserting that the offering of the loans was general to the public and that it was solicited by Westcap as a broker for Hutton and Hutton Inc., to buy the mortgage loans.

However, in order to meet the test for a security it must meet all the requirements set out in the *Howey* test. Cases from the Eighth Circuit have clearly established that a participation interest which is payable at a fixed rate of interest does not include an expectation of profit to be derived from the managerial or entrepreneurial efforts of others and, therefore is not a security. *Union National Bank of Little Rock v. Farmers Bank,* supra; *Kansas State Bank v. Citizens Bank,* supra; *Schultz v. Dain Corp.,* 568 F.2d 612 (8th Cir.1978); *Fargo Partners v. Dain Corp.,* 540 F.2d 912 (8th Cir.1976).

Plaintiff cites *McGill v. American Land & Exploration Co.,* 776 F.2d 923 (10th Cir.1985), in which the court found an investment scheme which satisfied the "common enterprise" requirement of the *Howey* test. However, the court also distinguished the transaction from a purely commercial loan transaction by stating that the "investor" was not to receive a specified rate of return on his investment. Instead he was eligible to participate in any operating profits that would be derived from the venture. *Supra,* at 925.

In contrast to the "investor" in *McGill* the plaintiff in this instance was to receive a return from his loan participation payable at a fixed rate of interest. Furthermore, there is no evidence or indication that his expected return on the mortgage loans was dependent upon the enterprenuerial or managerial efforts of others. In *Fargo Partners v. Dain Corp.,* supra, the court referred to the alleged investor's experience, business knowledge and control over the operation. "Under these circumstances an essential prerequisite for the existence of an investment contract—substantial reliance on the efforts of the seller or a third party for a return on the investment—is lacking." *Supra* at 915. It is clearly stated in the agreement between the parties that both are experienced and knowledgeable in financial transactions such as involved herein and that neither party relied on any representations made by the other concerning the loans purchased. Plaintiff retained control over the loan participations by having the right to retain or replace FAMCO as the servicer on the mortgage loans. Therefore, it is evident that plaintiff was not relying on the efforts of others for a return on its participation in the mortgage loans.

Plaintiff attempts to embellish the *Howey* test with the "superior access" requirement established by the court in *Commercial Discount Corp. v. Lincoln First Commercial Corp.,* 445 F.Supp. 1263 (S.D.N.Y. 1978). However, that requirement was rejected by the Eighth Circuit Court of Appeals in *Kansas State Bank v. Citizens Bank,* 737 F.2d 1490 (8th Cir.1984) wherein the court strictly followed the *Howey* test.

After careful consideration of the pleadings filed by the parties and the record which has been developed the Court finds that the mortgage loans purchased by plaintiff do not meet the requirements established by the *Howey* or *Smith* tests and therefore, are not securities as defined in the state securities laws. The Court finds that the standard established by the United States Supreme Court in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) for granting a Rule 12(b)(6) motion to dismiss has been met. Plaintiff can prove no set of facts in support of its claim of fraud and misrepresentation or its claim of a state securities law violation.

The Court hereby incorporates its findings of fact and conclusions of law pursuant to Rule 52, Fed.Rules of Civ.Pro.

A separate judgment shall be entered contemporaneously herewith.

## JUDGMENT

In accordance with the Order entered this date in the above-styled cause

IT IS THEREFORE CONSIDERED, ORDERED, AND ADJUDGED that defendants' Motion to Dismiss should be and the same is hereby granted. Plaintiff's com-

plaint is hereby dismissed with prejudice on all counts.